2019R01345/BJC

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20- 448-BRM |
| | : | |
| v. | : | |
| | : | |
| SHERMAN KENNERSON | : | 18 U.S.C. § 371 |

## **I N F O R M A T I O N**

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**(Conspiracy to Violate the Anti-Kickback Statute)**

1.  At all times relevant to this Information:

### The Defendant and Related Clinical Laboratories

a. Defendant SHERMAN KENNERSON ("defendant KENNERSON") was a resident of Plano, Texas, and co-owned with co-conspirator Jeffrey Madison ("co-conspirator Madison") and others, Metric Lab Services, LLC ("Metric Lab") and Spectrum Diagnostic Labs, LLC ("Spectrum Lab") (together, the "Labs").

b. Metric Lab was a clinical laboratory located in Mississippi that performed genetic tests and submitted claims to Medicare.

c. Spectrum Lab was a clinical laboratory located in Texas that performed genetic tests and submitted claims to Medicare.

d. The Labs were approved providers of the Medicare Program ("Medicare"), and Medicare paid the Labs for performing genetic tests and related services on Medicare beneficiaries who were referred to the Labs.

e.      Defendant KENNERSON, co-conspirator Madison, and others oversaw the Labs' marketing and sales operations through which outside marketing groups recruited physicians to refer patients' DNA samples to the Labs for genetic tests and related services.

**Relevant Individuals and Entities**

f.      Ark Laboratory Network LLC ("Ark") was a Florida limited liability company that purported to operate a nationwide network of laboratories and laboratory partners that facilitated genetic testing.

g.      Edward B. Kostishion ("Kostishion"), a co-conspirator not charged herein, resided in Lakeland, Florida and was a managing partner and part owner of Ark.

h.      Kacey C. Plaisance ("Plaisance") resided in Altamonte Springs, Florida and was a managing partner and part owner of Ark.

i.      Jeremy M. Richey ("Richey") resided in Mars, Pennsylvania and was a managing partner and part owner of Ark.

j.      Jeffrey Tamulski ("Tamulski") resided in Tampa, Florida.

**Background on the Medicare Program and Genetic Testing**

k.      Medicare was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "health care program" as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f). Individuals who received benefits under Medicare were commonly referred to as "beneficiaries."

l.   The Medicare Part B program was a federally funded supplemental insurance program that provided Medicare insurance benefits for individuals aged 65 or older, and for certain individuals who were disabled. The Medicare Part B program paid for various medical services for beneficiaries, including diagnostic genetic tests.

m.   Genetic tests were laboratory tests designed to identify specific inherited mutations in a patient's genes. These genetic variations affected a patient's risk of developing certain diseases or how the patient responded to medications.

n.   Genetic tests related to a patient's hereditary predisposition for cancer were commonly referred to as "CGx" tests. Pharmacogenomic genetic tests related to identifying how a patient's genes affect the patient's response to drugs were commonly referred to as "PGx" tests.

o.   To conduct a genetic test, a laboratory must obtain a DNA sample from the patient. Such samples were typically obtained from the patient's saliva by using a cheek (buccal) swab to collect sufficient cells to provide a genetic profile. The DNA sample was then submitted to the laboratory for analysis, such as CGx or PGx.

p.   If the patient had insurance, the laboratory typically submitted a claim for reimbursement for the test to the patient's insurance carrier. Reimbursement rates for CGx tests may have exceeded $10,000 per test, while reimbursement rates for PGx may have exceeded $6,500 per test.

2. From in or about January 2018 through in or about May 2019, in the District of New Jersey and elsewhere, defendant

**SHERMAN KENNERSON**

did knowingly and intentionally conspire and agree with co-conspirator Madison and others to commit an offense against the United States, that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to individuals in order to induce referrals of patients to the Labs for the furnishing and arranging for the furnishing of items and services, that is, the referral of patient DNA samples to the Labs for genetic testing and related services, for which payment was made in whole or in part under a Federal health care program, namely, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

### Object of the Conspiracy

3. The object of the conspiracy was for defendant KENNERSON, co-conspirator Madison, and others to unlawfully enrich themselves by offering and paying kickbacks and bribes for the referral of patient DNA samples to the Labs for genetic testing and related services that the Labs billed to and obtained payments from Medicare.

### Manner and Means of the Conspiracy

4. The manner and means by which defendant KENNERSON, co-conspirator Madison, and others sought to accomplish the object of the conspiracy included, among other things, the following.

4

5. Through the Labs, defendant KENNERSON, co-conspirator Madison, and others paid bribes to Ark to induce the referral of patients' DNA samples to the Labs, including from Medicare beneficiaries in New Jersey.

6. To effectuate the conspiracy and disguise these bribes, defendant KENNERSON, co-conspirator Madison, and others, through the Labs, entered into sham agreements with Ark and Tamulski under which Ark purported to provide various consulting, marketing, and other services for an hourly rate (the "Sham Agreements").

7. In reality, defendant KENNERSON, co-conspirator Madison, and others, through the Labs, paid Ark and Tamulski in exchange for referrals based on the revenue the Labs received from federal health care programs, including Medicare. Specifically, defendant KENNERSON, co-conspirator Madison, and others used the following formula to determine the amount of kickbacks and bribes paid to Ark and Tamulski (the "Kickback and Bribe Formula"): (a) calculating the amount of Medicare revenue that the Labs received as a result of genetic tests that Ark referred to the Labs; (b) deducting a negotiated costs of goods sold ("COGS") amount that the Labs incurred in connection with the tests and, in some cases, a billing fee; and (c) paying Ark and Tamulski a percentage of the remaining profit.

8. Defendant KENNERSON, co-conspirator Madison, Ark, Tamulski, and others tracked: (a) the amounts paid as kickbacks and bribes to Ark and Tamulski; (b) the genetic tests, including CGx and PGx tests, that Ark and

Tamulski referred or caused to be referred to the Labs; and (c) the revenue that these genetic tests generated for the Labs.

9. To conceal the solicitation and receipt of kickbacks and bribes from the Labs, Ark and Tamulski drafted, submitted, and facilitated the submission of sham Ark invoices to the Labs based on hourly services and rates, as set out in the Sham Agreements.

10. Specifically, Ark submitted invoices for hourly services to conceal that defendant KENNERSON, co-conspirator Madison, Ark, Tamulski, and others, had already determined and agreed upon the amount that each of the Labs would pay Ark and Tamulski based on the Kickback and Bribe Formula in exchange for referring and arranging for referrals of genetic tests for Medicare beneficiaries to the Labs.

**Overt Acts**

11. In furtherance of the conspiracy and to effect its object, defendant KENNERSON, co-conspirator Madison, and others committed or caused the commission of the following acts in the District of New Jersey and elsewhere:

 a. In or about August 2018, through Metric Lab, defendant KENNERSON, co-conspirator Madison, and others agreed to pay Tamulski 15% and Ark 45% of the total revenue collected in connection with genetic test referrals that Ark delivered to Metric Lab, after deductions for COGS and a billing fee. This included amounts that Medicare paid Metric Lab in connection with genetic tests performed for beneficiaries in New Jersey.

      b.      On or about August 17, 2018, a Metric Lab employee ("Individual-1") emailed defendant KENNERSON, co-conspirator Madison, and Tamulski the calculation pursuant to the Kickback and Bribe Formula and the corresponding amounts owed to Tamulski and Ark, which resulted in "payouts" of approximately $28,853.93 to Tamulski and approximately $86,561.79 to Ark.

      c.      On or about August 20, 2018, Kostishion emailed defendant KENNERSON and co-conspirator Madison, copying Plaisance and Richey, an Ark invoice for August 1 through August 15, 2018, in the amount of $86,562.00 (the "First August Ark Invoice"), which merely rounded up to the next dollar the same amount—$86,561.79—that Metric Lab had already calculated under the Kickback and Bribe Formula. This sham invoice purported to describe approximately 346.25 hours of certain services that Ark provided at an hourly rate of $250 per hour.

      d.      On or about August 21, 2018, Tamulski sent a text message to Kostishion stating that co-conspirator Madison "asked if you could update your invoice. They want hours in total (ie 120 hours instead of 40/3) He suggested breaking it up like 118.5 (etc ...)."

      e.      On or about August 21, 2018, Kostishion emailed a revised sham Ark invoice for August 1 through August 15, 2018, for the same $86,562.00 (the "Second August Ark Invoice") "as per your request" to defendant KENNERSON and co-conspirator Madison, copying Plaisance and Richey. As with the First August Ark Invoice, this sham invoice purported to describe the same services that Ark provided at an hourly rate of $250 per hour but, instead

7

of providing increments such as "40.0 /4," simply totaled the hours performed in each category.

   f.  On or about August 21, 2018, Kostishion engaged in a text message exchange with defendant KENNERSON and co-conspirator Madison in which Kostishion informed them that he "just resent . . . the updated invoices as per your request, please process the wire accordingly[.]"

   g.  From on or about August 6, 2018 through on or about January 10, 2019, Metric Lab paid Ark kickbacks and bribes totaling approximately $136,000.

In violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1. Upon conviction of the offense of conspiracy to pay illegal remunerations, contrary to 42 U.S.C. § 1320a-7b(b)(2)(A), in violation of 18 U.S.C. § 371, as alleged in this Information, defendant KENNERSON shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, obtained by the defendant that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense, the value of which totaled approximately $517,751.

### Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of defendant KENNERSON:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, under 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of defendant KENNERSON up to the value of the forfeitable property described above.

*Craig Carpenito*
CRAIG CARPENITO
United States Attorney

| | |
|---|---|
| CASE NUMBER: _____ | |
| United States District Court<br>District of New Jersey | |
| UNITED STATES OF AMERICA | |
| v. | |
| SHERMAN KENNERSON | |
| **INFORMATION** | |
| 18 U.S.C. § 371 | |
| **CRAIG CARPENTIO**<br>*UNITED STATES ATTORNEY*<br>*NEWARK, NEW JERSEY* | |
| BERNARD J. COONEY<br>ASSISTANT U.S. ATTORNEY<br>(973) 645-2823 | |